United States District Court
Southern District of Texas
**ENTERED**
October 03, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALICE L. WAITES, § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 4:22-cv-03339 |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

## OPINION AND ORDER

Plaintiff Alice L. Waites ("Waites") seeks judicial review of an administrative decision denying her application for disability insurance benefits under Title II of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Waites and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 15, 17. After reviewing the briefing, the record, and the applicable law, Waites's motion for summary judgment (Dkt. 15) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 17) is **GRANTED**.

## BACKGROUND

On March 31, 2021, Waites filed an application for Title II disability insurance benefits, alleging disability beginning December 31, 2019. Waites's application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Waites was not disabled. Waites filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit

their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an

indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Waites "did not engage in substantial gainful activity during the period from her alleged onset date of December 31, 2019 through her date last insured of March 31, 2021." Dkt. 10-3 at 15.

The ALJ found at Step 2 that Waites suffered from "the following severe impairments: lateral epicondylitis of the dominant right elbow status post-surgical repair and chronic obstructive pulmonary disease (COPD)." *Id.* at 16.

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments. *See id.*

Prior to consideration of Step 4, the ALJ determined Waites's RFC as follows:

> [Waites] had the residual functional capacity to perform an enhanced range of sedentary work as defined in 20 CFR 404.1567(a). Specifically, [she] could stand and/or walk at least six hours out of an eight-hour workday. She can lift and/or carry 10 pounds occasionally and 5 pounds frequently with the dominant hand. She has no limits lifting and/or carry[ing] with the non-dominant hand. She can sit at least six hours in an eight-hour workday. Due to COPD, [Waites] should never be required to work in environments with concentrated exposure to pulmonary irritants.

*Id.* at 17.

At Step 4, the ALJ found that "[Waites] was unable to perform any past relevant work." *Id.* at 20.

Nonetheless, the ALJ elicited testimony from a vocational expert ("VE") that "there were jobs that existed in significant numbers in the national economy that [Waites] could have performed." *Id.* at 21. Based on the Medical-Vocational Rules, the ALJ explained that "[Waites] was not under a disability, as defined in the Social

Security Act, at any time from December 31, 2019, the alleged onset date, through March 31, 2021, the date last insured." *See id.* at 22.

## DISCUSSION

Waites advances two arguments why I should reverse the ALJ's decision, though they are both in service of a single point of contention: that the ALJ failed to consider all of the evidence. Neither argument is persuasive.

Waites's first argument is that the ALJ failed to "consider[] and evaluate[]" Waites's "restricted range of motion." Dkt. 15 at 10. Specifically, Waites highlights that "[e]xamination of [her] right elbow revealed decreased painful range of motion," and that flexion in Waites's right elbow "was at 125 degrees." *Id.* at 9. Waites contends—citing generally to the CDC's website—that "[n]ormal elbow flexion for a female ranges from 148.5–150.9 degrees." *Id.* Waites argues that the ALJ's failure to account for her decreased flexion "is significant" because "the ALJ found [Waites] had no restriction in range of motion in her right dominant elbow, leading to a finding that [she] could handle all of the exertional demands in the three jobs that the ALJ [found that she] could perform." *Id.* I disagree.

To start, Waites misrepresents the ALJ's decision. Contrary to Waites's brief, the ALJ explicitly *recognized* the restricted range of motion in Waites's right elbow. Specifically, the ALJ observed that "right elbow supination . . . was rated +4/5 and right elbow pronation/flexion/extension . . . were all rated at 4-/5." Dkt. 10-3 at 19. The ALJ noted that "these measures show only mild weakness of [Waites's] right elbow, and the reduced residual functional capacity adequately accounts for the elbow impairment." *Id.* Thus, it is simply incorrect for Waites to say that the ALJ found that she had no restricted range of motion in her right elbow. It is also incorrect to suggest that this restricted range of motion is significant. The impairment rating evaluation shows that the decreased flexion in Waites's right elbow resulted in only "a 1% whole person impairment rating." Dkt. 10-23 at 39. The ALJ expressly noted this finding. *See* Dkt. 10-3 at 18 ("In May 2021, it was determined the claimant reached maximum medical improvement on

4

April 13, 2021 with a 1% whole person impairment rating."). In fact, the ALJ went on to note that a later, "separate evaluation assigned [Waites] with a 2% whole person impairment rating." *Id.* "Thus, there is no substantial evidence error." *Washington v. Barnhart*, 413 F. Supp. 2d 784, 797 (E.D. Tex. 2006) ("[N]othing suggests inability to perform work at the sedentary exertional level. . . . [A] reasonable fact finder weighing the same evidence could come to the same conclusion as did [the ALJ here], *viz.*, that [Waites] can perform work at less than the full range of sedentary work but not significantly less, with limitations.").

Waites next argues that the ALJ failed to recognize that Waites "could not have maintained and sustained a full-time competitive job in light of [Waites's] many medically related visits." Dkt. 15 at 12. In making this argument, Waites points to 54 "medically related and therapy visits" she had between June 2019 and December 2021. *Id.* at 11. For the time period from December 31, 2019 through January 5, 2021, Waites notes that she averaged 1.75 medical visits per month. Waites asserts that it is impossible to maintain competitive employment if an individual is absent more than one day per month. I agree with the Commissioner that Waites "conflates her 1.75 monthly average medical and physical therapy appointments with *days off*, instead of properly noting that such appointments did not last all day and required a day off each." Dkt. 17-1 at 10. I also agree with the Commissioner that Waites's claim "that each such appointment would equate to a full day absence defies logic" where "the record evidence show[s that] such appointments were routinely one hour or less." *Id.* at 11. Because considering each of Waites's medical appointments as the equivalent of needing an entire day off work would not be a credible choice, the ALJ did not err in refusing to do so.

5

## CONCLUSION

For the reasons provided above, Waites's motion for summary judgment (Dkt. 15) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 17) is **GRANTED**.

SIGNED this 3rd day of October 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE